IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

*IN RE:*

ZILKHA BIOMASS SELMA, LLC,

DEBTOR.

CASE NO.: 21-20043-JCO
CHAPTER 7

## MEMORANDUM ORDER AND OPINION

This matter came before the Court on the Motion of the Chapter 7 Trustee, Terrie S. Owens, ("Trustee's Motion") to Pay Administrative Expenses (docs. 186, 197), the Objection by UMB Bank, National Association ("UMB")(doc. 211), and the Response of Parker Towing Company, Inc. ("Parker Towing")(doc. 218). Proper notice of hearing was given and appearances were noted on the record. Upon consideration of the record, pleadings, briefs, and arguments of counsel, the Court finds that UMB's Objection is due to be OVERRULED for the following reasons:

### *JURISDICTION*

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§1334 and 157, and the Order of Reference of the District Court dated August 25, 2015. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A).

### PROCEDURAL HISTORY AND FACTS

The Debtor formerly operated an industrial mill ("Zilkha Plant") which utilized highly combustible black pellets ("Pellets"). The Debtor filed for Chapter 7 bankruptcy relief on March 15, 2021. After the Debtor's 341 meeting, the Chapter 7 Trustee requested and obtained an order to sell all inventory, furniture, fixtures, equipment, automobiles, and miscellaneous personal

1

property of the Debtor. (Doc. 102). UMB has continually asserted a first priority lien on and security interest in all of the Debtor's Assets. (Docs. 29, 211, 254). UMB did not object to the Trustee's employment of an auctioneer to market and sell the Debtor's Assets. (Doc. 29 at 2). The Trustee previously sought to abandon the estate's interest in Pellets which were located on a barge owned by Parker Towing. (Doc. 81). Parker Towing objected to the abandonment because of the highly combustible nature of the Pellets and the potential harm posed to the public. (Doc. 89).

The Trustee and Parker Towing reached a resolution as set out in an Application for Administrative Claim ("Application"). (Doc. 124). The Application stated in part:

> . . . 2. As set forth more fully in Parker Towing's objection [doc. 89], the pellets on barge PTC 852 are of the same type as the ones that burned and/or self-heated aboard Parker Towing's barges in Mobile in 2019, and that are currently at Zilkha's facility being monitored and treated daily to mitigate self-heating and avoid self-combustion.
>
> . . . 4. In order to resolve Parker Towing's objection [doc. 89] and to address the potential hazards presented by the pellets remaining on barge PTC 852, as well as the barge demurrage being incurred daily, Parker Towing and the Trustee have agreed, subject to the Court's approval, that in exchange for the allowance and payment to Parker of an administrative expense claim of $45,000, Parker Towing will remove and dispose of (via landfill) the approximately 1,477 tons of Zilkha Black Pellets aboard barge PTC 8521 and will waive its post-petition demurrage claim for barge PTC 852 (which totals $52,850 through August 12, 2021).
>
> 5. Based on the foregoing, the removal and disposal of the pellets on barge PTC 852 is appropriate under 11 U.S.C. § 725. Furthermore, Parker Towing should be allowed an administrative expense claim of $45,000 for such removal and disposal under 11 U.S.C. § 503(b)(1)(A), as an actual and necessary expense of preserving the estate. See, e.g., *In re Stevens*, 68 B.R. 774, 783-84 (D. Me. 1987) (finding that waste oil "constitutes an imminent and identifiable danger, and that the costs of protecting the public from that danger are entitled to treatment as costs of administration"). Payment should be made promptly after the Trustee's receipt of proceeds from the sale of Zilkha's assets . . .

(*Id*. at 1-2.)

The Application was served on all interested parties and no objections were filed.[1] At the hearing, the Trustee stated that the resolution was beneficial for several reasons including: (1) $45,000.00 was less than the actual cost to remove and dispose of the Pellets; (2) it also resolved Parker Towing's claim for post-petition demurrage charges; and (3) it avoided the need for litigation. The Court, noting no objections, found good grounds therefore and approved the Application by an Order entered August 31, 2021 ("August 21 Order") stating in part, ". . .Parker Towing is allowed an administrative expense claim of $45,000.00 under 11. U.S.C. §503(b)(1), to be paid promptly after the Trustee's receipt of proceeds from the sale of the Debtor's assets." (Doc. 134).

On May 5, 2022, the Trustee filed a report from the sale of the Debtor's assets indicating gross proceeds of $2,637,797.64 ("Sale Proceeds") as well as the Trustee's Motion to pay various administrative expenses. (Docs. 185, 186). UMB objected to the Trustee's Motion. (Doc. 211). At the hearing, UMB did not pursue its objection to the payments of the North Dallas Water Authority ("NDWA") for water usage, Larry Price ("PRICE") for security and payroll, or RSO Services ("RSO") for removal of radioactive sensors at the Zilkha Plant. With respect to the Parker Towing Expense, the Trustee argued that: (1) the August 21 Order already approved the $45,000.00 payment ("Parker Towing Expense") to Parker Towing from the Sale Proceeds; (2) the Pellets were collateral of UMB Bank; (3) removal of the Pellets was necessary, reasonable, and beneficial to UMB; and (4) if the Trustee abandoned the Pellets, they would be left to UMB to deal with.

---

[1] The Record reflects that at least six attorneys filed notices of appearance for UMB and all of them were served with the Application.

3

UMB contended Parker Towing's Expense could not be paid from the Sale Proceeds because the requirements of 11 U.S.C. 506(c) were not met. There was no dispute that the Debtor did not (and does not) have any unencumbered assets. Following the hearing, the Court entered an Order directing the Sale Proceeds to be paid to UMB less certain enumerated expenses including the payments to NDWA, PRICE, and RSO. (Doc. 307). The Order further stated that the Court would take the issue of whether the Trustee could pay the Parker Towing Expense from the Sale Proceeds under advisement and directed the Trustee to hold such amount pending further ruling. Thus, that is the only issue remaining to be adjudicated herein.

## ANALYSIS

### The Court's Prior Order is Dispositive

The bankruptcy court is in the best position to interpret and apply its own order. *In re Ranch House of Orange-Brevard, Inc.,* 773 F.2d 1166, 1168–69 (11th Cir. 1985). As courts of equity, bankruptcy courts also have the power to employ equitable doctrines in adjudicating the rights of parties. *Id.*; See also, *Bank of Marin v. England*, 385 U.S. 99, 103, 87 S. Ct. 274, 277, 17 L.Ed.2d 197 (1966*); Dooley v. Weil* (*In re Garfinkle*), 672 F.2d 1340 (11th Cir.1982). For instance, the doctrines of estoppel, waiver, and laches may prevent parties from pursuing claims or defenses. The equitable doctrine of estoppel by laches may be applied when three elements are present: (1) a delay in asserting a right or a claim; (2) the delay was not excusable; and (3) undue prejudice to the party against whom the claim is asserted. *Kason Indus., Inc. v. Component Hardware Group, Inc.,* 120 F.3d 1199, 1203 (11th Cir.1997).

The August 21 Order directing that the Parker Towing Expense be paid promptly after the Trustee's receipt of proceeds from the sale of the Debtor's assets is dispositive. The language of

4

the Order is unambiguous and application thereof, in the context of the case, requires the Parker Towing Expense be paid from the Sale Proceeds. The terminology in the August 21 Order mirrored the relief sought in the Application, which was properly served on all parties, including UMB. At the time of the Application and hearing, the parties knew or should have known that there were no unencumbered assets for the Trustee to administer. As part of the agreement with the Trustee, Parker Towing not only waived its post-petition demurrage charges but affirmatively undertook the duty to dispose of 1477 tons of the Debtor's hazardous inventory. The Court interpreted the Application as requesting payment from the proceeds of the previously approved auction. Otherwise, there would have been no need to reference the Sale Proceeds or tie the payment of the Parker Towing Expense to completion of the auction. Thus, the Court intended the August 21 Order to be construed accordingly.

The Court does not find it appropriate or equitable to deprive Parker Towing of the benefit of its bargain with the Trustee based on UMB's untimely objection. UMB is not entitled to the relief sought because: (1) UMB did not timely raise its objection; (2) its delay was not excusable; and (3) Parker Towing would be prejudiced if denied payment for its post-petition services. The record reflects that UMB received notice of the Application as well as the hearing. (Doc. 126). UMB did not object, appear at the hearing, or timely seek relief from the August 21 Order. Nearly a year passed after the entry of the August 21 Order before UMB raised this issue in Response to the Trustee's Motion. Further, the record reflects that UMB is well represented by numerous counsel who were served with the Application, hearing notice, and August 21 Order. Although UMB argued, at the later hearing on the Trustee's Motion, that it did not realize the Application proposed to pay Parker Towing from the Sale Proceeds, the Court has already explained above that the Order was clear in that respect.

UMB has consistently claimed a first priority lien on all of the Debtor's assets and has acknowledged there are no other unencumbered assets. (Doc. 211). Hence, their position that they did not know the costs of disposal would be paid from the sale of their collateral seems disingenuous. Considering the present posture of this case, if Parker Towing is not paid from the Sale Proceeds, it most likely will not receive any payment for its resolution with the Trustee requiring it to dispose of the hazardous Pellets. Additionally, UMB consented to payments to other entities which provided mitigation, disposal, and clean-up services. Under the circumstances, Parker Towing would be unduly prejudiced by the entry of an order effectively nullifying the August 21 Order and denying it payment for its post-petition services disposing of the hazardous Pellets. Therefore, the Court finds that UMB's objection is due to be overruled because it is contrary to the August 21 Order as well as equitable principles.

Payment to Parker Towing from the Sale Proceeds is Appropriate Under 506(c)

Although the Court finds the above analysis dispositive, it will nonetheless address why Parker Towing would otherwise be entitled to payment from the Sale Proceeds. Section 506(c) is an exception to the general rule that administrative expenses may not be charged against the collateral of a secured creditor. *Matter of Trim–X*, 695 F.2d 296, 301 (7th Cir.1982); *Guy v. Grogan (In re Staunton Indus., Inc.*), 74 B.R. 501, 504 (Bankr.E.D.Mich.1987); *In re Wyckoff*, 52 B.R. 164, 166 (Bankr.W.D.Mich.1985). It provides in part:

> . . . The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim . . .

11 U.S.C.§506(c).

Some courts have also found both express and implied consent are viable, alternative basis on which a bankruptcy court may surcharge a secured creditor's collateral. See *In re Tollenaar Holsteins*, 538 B.R. 830 (Bankr. E.D. Cal. 2015)(secured creditors with liens on substantially all the assets of jointly administered Chapter 11 estates, and with knowledge that each estate was administratively insolvent, impliedly consented to surcharge of their respective collateral for expenses that trustee and trustee's professionals incurred in administration of estates). Other courts have also noted that in some circumstances, costs and expenses can be charged against property subject to a security interest in order "to prevent a windfall to a secured creditor at the expense of the estate. *In re JKJ Chevrolet, Inc.*, 26 F.3d 481, 482 (4th Cir. 1994) (citing *IRS v. Boatmen's First Nat'l Bank of Kan. City,* 5 F.3d 1157, 1159 (8th Cir.1993)).

Even in the absence of the August 21 Order, sufficient grounds exist for the Trustee to surcharge the Parker Towing Expense against the Sale Proceeds. The record established that such expense was necessary, reasonable, and beneficial to UMB. The Trustee could not abandon the Pellets due to the public health and safety risk they posed. Thus, it was necessary for her to manage, mitigate, and eventually insure safe disposal of the Pellets in conjunction with the administration of the estate.

Secondly, the facts establish that the expense is reasonable. The Application set out that Parker Towing was owed $52,850.00 as demurrage for post-petition storage of 1477 tons of the Debtor's Pellet inventory. Yet the Trustee negotiated a resolution in which Parker Towing would safely dispose of the Pellets and waive its claim for post-petition demurrage. Additionally, the Trustee represented to the Court that $45,000 was less than the actual cost of removal. The storage of the Pellets required constant monitoring and mitigation to avoid a catastrophe like the one that occurred in 2019 when one of Parker Towing's barges carrying pellets caught fire and sank.

7

Certainly the ultimate disposal of the Pellets also had to be performed with a heightened standard of care. Thus, the Court concludes that the resolution and amount were reasonable under the circumstances.

Despite UMB's argument to the contrary, the Court finds that UMB benefitted from the services provided by Parker Towing. Parker Towing maintained a place for 1477 tons of highly combustible Pellets to remain away from UMB's other collateral. In the Court's view, such offsite storage, lowered the risk to UMB's remaining collateral, lessened the costs of managing and mitigating such hazard at the Zilkha Plant, and reduced the scope of public health and safety concerns. Additionally, the offsite storage resulted in one less obstacle for the Trustee to deal with at the Zilkha Plant in conjunction with the marketing and liquidation of UMB's other collateral. Such efforts yielded the Sale Proceeds from which UMB received payment.

The Trustee also indicated that the Parker Towing resolution avoided litigation and if she had abandoned the Pellets, UMB would have had to deal with the disposal of its collateral. The Court recognizes that the avoidance of litigation was beneficial to UMB. If litigation had ensued, it would have increased the Trustee's expenses and likely delayed or reduced payment to UMB. Also, due to the highly combustible nature of the Pellets, abandonment would have posed a threat to the public and the environment. The Trustee's experience, expertise, resources, and powers appear to have primarily served to harness, protect, and liquidate UMB's collateral. Her efforts of avoiding potentially devastating consequences and effecting an orderly disposition of assets bestowed a substantial benefit almost exclusively to UMB. Under such circumstances, although it seems UMB would like to enjoy the benefit of the Trustee's administration without the associated burdens, such result would be inequitable and essentially constitute a windfall. Thus, the Court

concludes that payment of the Parker Towing Expense from the Sale Proceeds is appropriate under 11 U.S.C. §506(c).

## CONCLUSION

Based on the forgoing, UMB's objection to the payment of the Parker Towing Expense from the Sale Proceeds is OVERRULED. The Chapter 7 Trustee is authorized to remit $45,000.00 to Parker Towing from the proceeds of the funds on hand.

Dated: September 30, 2022

_____
JERRY OLDSHUE
CHIEF U.S. BANKRUPTCY JUDGE